Wanda NIKOLOUTSOS, Appellant,

v.

Athanassios NIKOLOUTSOS, Appellee.

No. 1:97–CV–00694.

United States District Court,
E.D. Texas,
Beaumont Division.

July 7, 1998.

Thomas J. Sibley, Beaumont, TX, for appellant.

William T. Burrell, Beaumont, TX, for appellee.

*ORDER AND MEMORANDUM*
*OPINION*

SCHELL, District Judge.

Appellant Wanda Nikoloutsos ("Appellant") appeals six orders entered by the Bankruptcy Court for the Eastern District of Texas. For the reasons discussed below, the challenged findings of the Bankruptcy Court are AFFIRMED.

## I. BACKGROUND

The principal facts of this case are set forth in the Bankruptcy Court's Order Denying Motion to Convert or Dismiss, published at 199 B.R. 624, 625–26 (Bankr.E.D.Tex. 1996). However, a brief recitation of the facts is helpful in resolving the issues currently before this court.

A state court entered a judgment in favor of Appellant against Athanassios Nikoloutsos ("Appellee") on May 12, 1995, in the actual damages phase of a personal injury trial. This judgment was in the amount of $600,-000.00, based on a jury's finding that Appellee had maliciously assaulted Appellant, his former spouse. Appellee filed for relief under Chapter 7 three days later, on May 15, 1995. The Bankruptcy Court lifted the automatic stay the following day, thereby allowing the state court to proceed with the punitive damages phase of the state court proceeding. On June 14, 1995, the state court entered an amended judgment in the amount of $863,440.00. This judgment included the original award of damages plus exemplary damages and prejudgment interest.

Appellee filed a Motion to Convert Chapter 7 to Chapter 13 pursuant to 11 U.S.C. § 706(a) on July 6, 1995. Four days later, on July 10, 1995, the Bankruptcy Court entered an order converting the case to Chapter 13. Appellant did not appeal the order. On July 20, 1995, Appellant filed an objection to the Motion to Convert, arguing that it was not filed in good faith because Appellee's debt exceeded the limits allowed by § 109(e) and were nondischargeable under either Chapter 7 or 13. The Bankruptcy Court never ruled on this objection, however, because the court

found that Appellant failed to properly preserve error. Appellant then filed a Motion for Dismissal on the ground that the state court judgment against Appellee was nondischargeable. The court denied the motion on September 5, 1995.[1]

On October 4, 1995, Appellant filed a Complaint to Determine Dischargeability of Debt. Appellant argued that the state court judgment was not dischargeable under 11 U.S.C. § 523(a)(6). The Bankruptcy Court held a confirmation hearing on Appellee's Chapter 13 Plan ("Plan") on January 10, 1996. The bar date to file a proof of claim under the Plan was December 6, 1995. The Bankruptcy Court found that Appellant failed to file a formal proof of claim. However, Appellant objected to the Plan, contending that the Bankruptcy Court should not confirm the Plan until resolving the issue of whether the state court judgment was dischargeable. The court confirmed the Plan on January 11, 1996, holding that no meritorious objection to the Plan had been raised.

Subsequently, Appellee filed a Motion for Summary Judgment in the Adversary Proceeding, on the grounds that § 523(a)(6) claims are not exempted from discharge under § 1328(a)(2). Appellant then filed a Motion to Convert or Dismiss, which the court denied on May 14, 1996. Appellant also moved for summary judgment on her complaint to revoke confirmation pursuant to § 1330(a) on the ground that Appellee engaged in fraudulent conduct. The court denied the motion and Appellee ultimately prevailed in that adversary proceeding.

Appellant now appeals from six orders of the Bankruptcy Court. Appellant presents the following issues for review by this court:

1. Whether the Bankruptcy Court deprived Appellant of due process when it converted this case to Chapter 13 only four days after Appellee filed his Motion to Convert and in refusing to address Appellant's objection thereto (Order Converting Case From Chapter 7 to Chapter 13);

---

1. The court denied the motion in open court after oral hearing. However, an order denying the motion was not actually signed until January 5, 1996.

2. Whether the Bankruptcy Court erred in entering an Order Denying Confirmation Order Revocation (Order Denying Confirmation Order Revocation);

3. Whether the Bankruptcy Court erred in granting summary judgment in favor of Appellee (Order Granting Summary Judgment);

4. Whether the Bankruptcy Court erred in entering an order of discharge while Appellant's Motion to Convert or Dismiss on the ground of fraud was still pending (Order Granting Discharge);

5. Whether the Bankruptcy Court erred in holding that no proof of claim had been timely filed by Appellant; and,

6. Whether the Bankruptcy Court erred in denying Appellant's Motion for Summary Judgment in the second adversary proceeding (Order Denying Appellant's Motion for Summary Judgment).

The court will address each issue in turn.

## II. ANALYSIS

### A. Order Converting Case from Chapter 7 to Chapter 13

As a threshold matter, Appellee argues that Appellant's appeal of this order is not properly before this court. Appellee contends that Appellant did not timely appeal the order. However, this court finds that the order was interlocutory in nature until the conclusion of the second adversary proceeding in this case. Therefore, this court has jurisdiction to hear Appellant's appeal from the Order Converting Case From Chapter 7 to Chapter 13.

Appellant argues that the Bankruptcy Court erred by converting this case to Chapter 13 only four days after Appellee filed his motion for conversion, and by refusing to address Appellant's objection to conversion. Appellant contends that the court did not have jurisdiction over this case because Appellee's debt to Appellant (the state court judgment) exceeded the $250,000.00 limit allowed by § 109(e).[2] The Bankruptcy Court,

however, held that it had jurisdiction because the eligibility limitations of § 109(e) are not jurisdictional. *In re Nikoloutsos,* 199 B.R. 624, 626 (Bankr.E.D.Tex.1996).

In reaching its decision, the court relied on the Fifth Circuit's holding in *Matter of Phillips,* 844 F.2d 230, 236 n. 2 (5th Cir.1988). In *Phillips,* the creditor argued that the eligibility limits of § 109(g) are jurisdictional. The Fifth Circuit rejected this argument. *Id.* The Fifth Circuit held that "the subject matter jurisdiction of the bankruptcy court comes from 28 U.S.C. § 1471 and 28 U.S.C. § 157, which provide that the bankruptcy courts shall have exclusive jurisdiction of all cases arising under Title 11." *Id.* The eligibility requirements of § 109, however, are simply factual or legal questions determined by the court. The court reasoned that to hold otherwise "would have far-reaching consequences. If eligibility raised an issue of subject matter jurisdiction, the parties could not expressly waive, or be held to have waived, their objections on the issue." *Id.*

Appellant argues that the Bankruptcy Court's reliance on *Phillips* was misplaced because that case involved § 109(g), not § 109(e). Appellant claims that the question of whether § 109(e) is jurisdictional is still an open question in this circuit. In support of this argument, Appellant points to *Matter of Hammers,* 988 F.2d 32, 35 n. 11 (5th Cir. 1993), where the Fifth Circuit stated "[b]ecause ... the [lower] court properly dismissed [the appellant's] proceeding without a motion by a party, we need not consider whether section 109(e) is jurisdictional in nature." According to Appellant, this language stands for the proposition that the Fifth Circuit has not yet decided whether § 109(e) is jurisdictional. Like the Bankruptcy Court below, this court is not persuaded by Appellant's argument.

■ Appellant is correct that in *Phillips* the Fifth Circuit addressed § 109(g), not § 109(e). However, the court's holding is equally applicable to § 109(e). Indeed, the court did not limit its analysis to § 109(g).

**2.** Section 109(e) provides in pertinent part: "Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $250,000.00 ... may be a debtor under chapter 13 of this title." 11 U.S.C. § 109(e).

Rather, the court based its holding on the eligibility requirements of § 109 in general and the premise that § 109 governs eligibility only. Further, the fact that the Fifth Circuit did not address whether § 109(e) is jurisdictional in *Hammers* does not stand for the proposition that the jurisdictional nature of that section is still an open question in this circuit. To the contrary, the court's language is nothing more than dicta demonstrating judicial restraint on the part of the Fifth Circuit. Therefore, Appellant's argument that the Bankruptcy Court did not have jurisdiction over this case under § 109(e) must fail.

Appellant next argues that the Bankruptcy Court erred when it granted Appellee's motion only four days subsequent to its filing and refused to rule on her objection filed ten days later. Appellant claims that the Bankruptcy Court was required to either (1) give Appellant twenty days notice before ruling on the motion or (2) show good cause why the twenty day notice period was reduced. This court does not agree.

■ Pursuant to Federal Rule of Bankruptcy Procedure 1017(d), a motion for conversion or dismissal may require notice and hearing as a contested matter pursuant to Rule 9014. FED.R.BANKR.P. 1017(d). However, conversion under § 706(a) is a matter of right and is not a contested matter. 9 COLLIER ON BANKRUPTCY § 1017.05[1]. "Conversion or dismissal pursuant to [§ ] 706(a) . . . shall be on motion filed and served as required by Rule 9013."[3] FED.R.BANKR.P. 1017(d). Because conversion under 706(a) does not constitute a contested matter, Rule 9013 does not require twenty days notice or hearing unless the bankruptcy court so directs. Further, contrary to Appellant's assertions, Rule 2002 does not afford parties a twenty day period in which to file an objection to motions to convert to Chapter 13. FED.R.BANKR.P. 2002(a).

■ Here, Appellee sought conversion to Chapter 13 pursuant to § 706(a). Thus, Rule 9013 governed the disposition of his motion. Twenty days notice was not required under Rule 9013. Further, because no hearing was held on Appellee's motion to convert, twenty days notice was not required under Rule 2002(a)(5). Therefore, the Bankruptcy Court's actions in converting this case to Chapter 13 only four days after the filing of Appellee's motion were proper.

■ Moreover, the Bankruptcy Court did not err in refusing to rule on Appellant's objection. Appellant did not make her objection until ten days after the Bankruptcy Court had granted the objected-to relief. Appellant's objection was untimely and failed to preserve error on the issue of Appellee's eligibility under Chapter 13. Further, Appellant did not reurge this objection at the confirmation hearing. Therefore, Appellant waived her objection. Accordingly, the Bankruptcy Court's Order Converting Case from Chapter 7 to Chapter 13 is hereby AFFIRMED.

## B. Order Denying Confirmation Order Revocation

■ Appellant next complains that the Bankruptcy Court erred when it denied her Complaint to Revoke Confirmation Pursuant to § 1330(a). A party may seek revocation of a confirmation order pursuant to § 1330(a). 11 U.S.C. § 1330(a). Revocation is proper if the court finds that the "order was procured by fraud." *Id.* Although fraud is not defined under § 1330(a), courts have determined that revocation is proper if the following five elements are established:

1. the debtor made a materially false representation relating to the confirmation standards;

2. the representation was either knowing or made with reckless disregard for the truth;

3. the representation was made to induce the court to rely upon it;

4. the court did rely upon it; and

5. the court entered the confirmation order as a consequence of false representation.

---

**3.** Section 706(a) "permits the debtor, as a matter of right, to convert a liquidation case to a case under chapter 11, 12, or 13 if the case has not previously been converted from one of those chapters to chapter 7." 9 COLLIER ON BANKRUPTCY § 1017.05[1].

*In re Edwards,* 67 B.R. 1008, 1009–10 (Bankr.D.Conn.1986).

In the present case, the Bankruptcy Court applied the *Edwards* factors and, after a full trial, determined that Appellant failed to meet her burden of persuasion on all but one element.[4] For purposes of this appeal, the parties concede that the *Edwards* factors should govern the fraud issue. Appellant argues, however, that the court erred by placing the burden of persuasion on her instead of Appellee. Second, Appellant argues that the court erred in its factual findings in favor of Appellee.

Appellant's appeal of this order raises questions of law and fact. Conclusions of law are subject to *de novo* review on appeal, while findings of fact are subject to the clearly erroneous standard. *Matter of Faden,* 96 F.3d 792, 795 (5th Cir.1996). The Bankruptcy Court's determination of the proper burden of persuasion under § 1330(a) is a question of law and will be reviewed *de novo.* The determination of whether a party has met her burden under each of the *Edwards* factors is a question of fact. Therefore, if the Bankruptcy Court applied the appropriate burden of persuasion in this instance, its findings of fact under § 1330(a) will be reviewed under the clearly erroneous standard.

### 1. Burden of Persuasion

In the adversary proceeding, Appellant urged the court to place the burden of persuasion upon Appellee to prove that he did not obtain confirmation by fraud. Appellant argued that the court should follow the language of *Faden,* a § 523(a)(3) case, in which the Fifth Circuit stated that the burden of persuasion in such cases "is on the debtor . . . to demonstrate absence of fraud or intentional design." *Id.* at 796 (internal quotations omitted) (ellipses in original). The Bankruptcy Court refused to follow *Faden.* Instead, the court held that since Appellant filed her complaint under § 1330(a), case law interpreting that section, not § 523(a)(3), should determine the appropriate burden of

persuasion. The court found that the majority of courts addressing the issue have placed the burden on the plaintiff.

In *Faden,* the debtor failed to state the correct address of one of his creditors in his petition. His debt to the creditor was ultimately discharged without the creditor's knowledge. Upon learning of the discharge, the creditor filed adversary proceedings alleging that the debts owed to it were not dischargeable under § 523(a)(3)(A). *Faden,* 96 F.3d at 795. The bankruptcy court found in favor of the creditor and ruled the debt nondischargeable. *Id.* On appeal, the debtor attempted to establish that the debt should be discharged under § 523(a)(3)(A) because his failure to properly schedule the debt was not intentional or the result of actual fraud. *Id.* at 797. The Fifth Circuit stated that while a court should not discharge a debt under § 523(a)(3) "if the debtor's failure to schedule that debt was due to intentional design, fraud, or improper motive[, if] the failure is attributable solely to negligence or inadvertence [by the debtor,] equity points toward discharge of the debt." *Id.* (citing *Matter of Stone,* 10 F.3d 285, 291 (5th Cir. 1994)). In the next sentence, the court stated that the debtor has the burden to demonstrate absence of fraud or intentional design. *Id.*

Appellant relies on the preceding sentence in support of her proposition that the Bankruptcy Court should have placed the burden of persuasion on Appellee to prove that he did not commit fraud. After a careful reading of § 523(a)(3) and *Faden,* however, this court is not persuaded by Appellant's argument. As previously discussed, the term "fraud" is not defined in § 1330(a). However, courts have used § 523(a)(2)(A) as a guideline "for determining the prerequisites necessary for the demonstration of fraud under § 1330(a) since actual fraud is included as a ground for exception to discharge under that section." *Edwards,* 67 B.R. at 1009.[5] Courts addressing the issue of actual fraud

---

**4.** The court found that Appellant met her burden of persuasion on the third element.

**5.** Section 523(a)(2)(A) excepts from discharge certain debts which are obtained by "false pre-

tenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A).

under 523(a)(2)(A) have uniformly adopted a five-prong test virtually identical to the one espoused by the court in *Edwards*. *See, e.g., In re Crutcher*, 215 B.R. 696, 699 (Bankr. W.D.Tenn.1997) ("In addition to agreeing on what type of fraudulent behavior § 523(a)(2)(A) covers, courts are also unanimous in the procedural aspects of such an action."). Courts have also held that the "party asking for the exception to the discharge bears the burden of proof in a § 523(a)(2)(A) cause of action," and that "the burden of proof on the objecting creditor is a preponderance of the evidence." *Id.* (citing *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)). The court in *Edwards* relied upon these judicially created factors when it formed a test for determining whether actual fraud has occurred in a § 1330(a) case. Because the *Edwards* test has its genesis in cases addressing fraud under § 523(a)(2)(A), logic would suggest that the procedure for proving actual fraud under § 1330(a) would also have its genesis in such cases.

Further, *Faden* dealt with § 523(a)(3), a statutory provision separate and distinct from either § 523(a)(2)(A) or § 1330(a). Both § 523(a)(2)(A) and § 1330(a) address whether a debt should be discharged in the presence of actual fraud; on its face, § 523(a)(3) does not involve the issue of whether a debtor has committed fraud.[6] Rather, § 523(a)(3) provides that discharge should not be allowed unless the creditor is given notice. The term "fraud" is not used in the statute. The issue of fraud only comes into play if the debtor attempts to show that the equities balance in favor of allowing discharge, despite his failure to notify his creditors. In this context, it is the debtor who seeks relief, and it is the debtor who carries the burden of persuasion.

■ In a case involving § 523(a)(2)(A) or § 1330(a), however, it is the creditor who seeks relief on the basis of fraud, and it is the creditor who carries the burden of per-

suasion. Thus, *Faden* does not stand for the proposition that the burden of persuasion always lies with the debtor to "disprove" fraud. To the contrary, the court's holding does nothing more than place the burden of persuasion upon the party seeking to establish an exception to discharge. To hold otherwise would allow a creditor to place a debtor in the precarious situation of being forced to prove a negative, simply by claiming that the debtor committed fraud. Accordingly, this court finds that the Bankruptcy Court correctly placed the burden of persuasion on Appellant.

### 2. Appellant's Failure to Prove Fraud

This court must next determine whether the Bankruptcy Court's finding that Appellant did not prove fraud was clearly erroneous. Appellant contends that Appellee committed fraud in two ways. First, Appellant argues that Appellee fraudulently listed his debt to Appellant as a contingent, unliquidated, and disputed debt in the amount of $0.00 in his petition, although he was aware of the state court jury verdict. Appellant further argues that Appellee again committed fraud when he listed his debt to Appellant as $0.00 in his schedules prior to confirmation, although he was fully aware of the amended judgment against him in excess of $800,-000.00, which he had not appealed. The Bankruptcy Court found that Appellant failed to meet her burden to show that the confirmation order was entered because of fraud.

■ This court is of the opinion that the Bankruptcy Court's findings were not clearly erroneous. Even if Appellant could show that the court erred when it found that Appellee did not make a materially false representation regarding his compliance with § 1325, Appellant has nevertheless failed to show that the Bankruptcy Court was clearly erroneous in finding that such a representation was known by the debtor to be false or

---

**6.** Section 523(a)(3) provides:
A discharge ... does not discharge an individual debtor from any debt ... neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to

permit ... timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing.
11 U.S.C. § 523(a)(3).

made with reckless disregard for the truth, or that the court relied upon such misrepresentation. Appellant's failure to establish either of these elements is fatal to her fraud claim.

During the trial below, the court and counsel for both parties questioned Appellee extensively regarding his reasons for listing his debt to Appellant as a contingent, unliquidated, and disputed debt in the amount of $0.00. Appellee testified that he listed the debt in such a manner on his petition because, at the time he filed bankruptcy, he believed no final judgment had been entered. Instead, he believed that only a jury verdict in the amount of $600,000.00 in the actual damages phase of the trial had been levied. His counsel in the state court trial informed him that there would be another phase to the trial—the punitive damages phase. Therefore, Appellee believed that the trial was not complete. Appellee also stated that he believed that there was a good chance the judge would reduce the jury's damages award after receiving a final verdict. Therefore, Appellee originally listed the debt as contingent, unliquidated, and disputed.

The Bankruptcy Court also questioned Appellee about his failure to list the final judgment on his schedules and for failing to amend his schedules. Appellee testified that he was aware of the final judgment when he filed his schedules. When the court asked Appellee why he did not list the debt if he was aware of the final judgment, Appellee testified that he believed he was supposed to list the debt as it was listed on the date he filed his petition. The court then asked Appellee if he acted on his own or upon counsel's advice. Appellee answered, "That's my attorney's decision. I—I'm not a Bankruptcy expert." Tr. at 50, Adversary Proceeding A–96–1041–A.

Based upon Appellee's testimony at trial, and the entire scope of the bankruptcy proceedings in this case, the Bankruptcy Court found the Appellee to be credible. The court also found that Appellee did not know that his schedules were false or recklessly disregard the truth when he filed his schedules. Rather, the court found that Appellee relied on the advice of counsel when filing, and

listed the debt as contingent or unliquidated. Because the court found that any misrepresentation that may have been made by Appellee was made unknowingly on the advice of counsel, the court held that Appellant failed to meet her burden of persuasion on this element.

After reviewing the testimony at trial and the entire record in this case, the court cannot find that the Bankruptcy Court's factual findings as to this element are clearly erroneous. The court conducted a full trial on the fraud issue. During this trial, Appellee was questioned extensively regarding this element not only by counsel, but also by the court. After listening to Appellee's testimony, and considering the history of this proceeding, the court found Appellee to be credible. Based upon the record in this case, there are two possible ways to interpret the facts—either Appellee told the truth or he did not. This court cannot now, without having the benefit of questioning Appellee in open court and observing his expressions, tone of voice, and overall demeanor, second guess the Bankruptcy Court and hold that it clearly erred in finding that any misrepresentation by Appellee was not knowing or made with reckless indifference to the truth.

Further, even if the Bankruptcy Court's finding on the previously discussed element is erroneous, Appellant has not shown that the court erred in finding that it did not rely upon any misrepresentation. The court affirmatively stated that it did not rely solely upon the schedules. Order Denying Confirmation Revocation at 14. The court stated that it was aware of the final amended state court judgment before confirmation and considered it in making its decision during the good faith inquiry. *Id.* Because the Bankruptcy Court found that Appellant waived any objection to conversion to Chapter 13 or confirmation, however, the court confirmed the Plan.

This court finds that the Bankruptcy Court's finding as to this element was not clearly erroneous. Only the Bankruptcy Court knows whether it relied upon any alleged misrepresentation. The court has stated that it was fully aware of the state court judgment and, therefore, did not rely on any

misrepresentation by Appellee. Appellant has not come forward with adequate proof that the Bankruptcy Court's findings about what it did or did not rely upon are incorrect. Accordingly, Appellant cannot prevail on this element of the *Edwards* test. Because Appellant has not established that the Bankruptcy Court findings as to the second and fourth elements of the *Edwards* test were clearly erroneous, her § 1330(a) claim must fail.[7] The Bankruptcy Court's Order Denying Confirmation Order Revocation is, therefore, AFFIRMED.

### C. June 13, 1996, Order Granting Summary Judgment to Defendant–Debtor

In her Complaint to Determine Dischargeability, Appellant sought a ruling that Appellee's debt was nondischargeable under § 1328(a). Section 1328 provides, in pertinent part: "As soon as practicable *after completion by the debtor of all payments under the plan* ... the court shall grant the debtor a discharge of all debts provided for by the plan...." 11 U.S.C. § 1328(a) (emphasis added). The court granted summary judgment in favor of Appellee. Appellant claims that the court's ruling in favor of Appellee was premature at the time the court granted his motion for summary judgment because Appellee had not yet completed his payments under the Plan.

■ Appellant misunderstands the Bankruptcy Court's ruling. The court did not rule that Appellee's debt was or was not dischargeable. Indeed, the court never reached the merits of this issue. Rather, the court ruled that the issue of dischargeability under § 1328(a) was not yet ripe because Appellee had not completed his payments under the Plan as required by the express language of § 1328(a). Accordingly, the court granted Appellee's motion for summary judgment solely on the ground that Appellant's complaint was not yet ripe for adjudication. The court expressly stated that its grant of summary judgment was without prejudice to Appellant's re-filing a complaint to determine dischargeability at the appropriate time.

Therefore, Appellant's argument is entirely consistent with the Bankruptcy Court's holding, and the court's ruling is entirely consistent with § 1328(a). Appellant claims that any ruling upon the dischargeability of the debt would have been premature at the time the court granted summary judgment. Likewise, the Bankruptcy Court reasoned that a ruling either in favor of or against the merits of Appellant's complaint would have been premature. Therefore, the Bankruptcy Court's grant of summary judgment comports with § 1328(a). Accordingly, the Bankruptcy Court's order granting summary judgment is AFFIRMED.

### D. Order Discharging the Debtor After Completion of Chapter 13 Plan

The Bankruptcy Court confirmed Appellee's Chapter 13 Plan on January 10, 1996. Appellant filed a Motion to Convert or Dismiss on April 5, 1996, which the Bankruptcy Court denied on May 9, 1996. Prior to discharge, Appellant filed an Objection to Notice of Plan Completion and Order Setting Discharge, in which Appellant objected to discharge on the grounds that her motion was still pending. On June 13, 1996, the court entered an Order Discharging Debtor Upon Completion of Chapter 13. Finally, the court entered an Order Dismissing Appellant's Motion to Convert or Dismiss Pursuant to Section 1330(a) on June 14, 1996. Appellant contends that the court erred in entering an order discharging Appellee while her Motion to Convert or Dismiss Pursuant to Section 1330(a) was still pending.

■ As previously discussed, a bankruptcy court can revoke an entry of an order of confirmation upon a showing of fraud under § 1330(a). 11 U.S.C. § 1330(a). Section 1330 states that upon revocation the court must dispose of the case pursuant to § 1307. *Id.* § 1330(b). Under § 1307, the court may either convert the case to Chapter 7 or enter an order of dismissal. *Id.* § 1307(c)(7). Further, the proper vehicle for requesting relief under § 1330(a) is through an adver-

---

7. Appellant's failure to establish these two elements is fatal to her fraud claim. Therefore, the court need not address whether the Bankruptcy

Court erred in its findings as to the first and fifth elements of the *Edwards* test.

sary proceeding to revoke confirmation, not through a motion to dismiss or convert. Fed.R.Bankr.P. 7001(5).

■ Therefore, according to § 1330(a), § 1330(b), § 1307, and Rule 7001(5), the proper course of action was for Appellant to seek revocation of confirmation pursuant to § 1330(a) through an adversary proceeding. However, Appellant sought conversion or dismissal via a motion practice. Because Appellant's motion did not constitute an adversary proceeding in accordance with the bankruptcy rules, her motion to convert or dismiss was never properly before the Bankruptcy Court. Consequently, the court properly dismissed her motion.

The fact that the court granted discharge the day before it dismissed Appellant's motion is not cause for reversal. First, the motion was never properly before the court. However, assuming for the sake of argument that the court did err by granting discharge a day before dismissing Appellant's motion, such error was harmless. The court dismissed Appellant's motion the day after it granted discharge. Appellant then filed a complaint seeking revocation under § 1330(a)—the proper method for seeking relief on the basis of fraud. The court then held a complete trial to determine whether revocation was necessary. After a full trial on the merits, the court determined that revocation was not proper because Appellant failed to carry her burden of proving fraud. Thus, once Appellant followed the proper procedures for seeking relief under § 1330(a), she was afforded a full opportunity to obtain the relief originally sought in her improper motion to convert or dismiss. Appellant therefore suffered no harm as a result of the court's order granting discharge. Therefore, the Bankruptcy Court did not commit reversible error when it ruled upon the issue of discharge during the pendency of Appellant's motion, and its order granting discharge is hereby AFFIRMED.

### E. Bankruptcy Court's Ruling that Appellant Failed to Timely File Proof of Claim

Appellant argues that the Bankruptcy Court erred when it held that she did not timely file a proof of claim. The court will first address Appellant's arguments regarding whether her formal Proof of Claim, filed April 17, 1996, was timely.

On July 27, 1995, the Bankruptcy Court issued an Order for Meeting of Creditors, Combined with Notice Thereof and of Automatic Stay (hereinafter "July 1995 Notice"). (R. at 220). This Notice expressly informed all creditors that the bar date for filing claims in this case was December 6, 1995. *Id.* This Notice also informed all creditors that the bar date would apply to the exclusion of untimely claims "whether or not [the creditor] is included in the list of claims filed by the debtor." *Id.* Appellant did not file a formal Proof of Claim on or before December 6, 1995.

■ The Bankruptcy Court held a Plan confirmation hearing on January 10, 1996. At this hearing, Appellant's counsel conceded that he "deliberately did not file a Proof of Claim." *Id.* at 333. The court signed an Order Confirming the Debtor's Plan and Related Orders that same day. Over two months later, on March 20, 1996, the clerk's office sent notice that the bar date in this case was extended for a period of thirty days from the date of the notice ("March 1996 Notice"). Appellant subsequently filed a formal Proof of Claim on April 17, 1996. The following day, during a hearing on Appellant's Motion to Convert or Dismiss, counsel for both parties informed the court of the March 1996 Notice. The court stated that the notice was sent in error and, on April 19, 1996, the court issued a correcting notice, notifying all parties that the March 1996 Notice had been issued in error and was incorrect. Appellant argues that because she filed a Proof of Claim within the thirty day period provided for in the March 1996 Notice, the court should have held that she timely filed a formal proof of claim. This court is not persuaded by Appellant's argument.

If Appellant had detrimentally relied on the March 20 Notice as establishing the correct bar date in this case, her argument might be more persuasive. However, that is not what happened here. Appellant received

the July 1995 Notice and was, therefore, fully apprised of the December 6, 1995, bar date. Appellant nevertheless failed to file a formal proof of claim before the bar date. Appellant also failed to file a formal proof of claim prior to the confirmation hearing or the court's order confirming the Plan. Therefore, Appellant did not timely file a formal proof of claim. The fact that the court erroneously issued the March 1996 Notice should not now be construed to have afforded Appellant a second bite at the same apple. Indeed, the court did not issue the March 1996 Notice until over two months had elapsed since confirmation of the Plan. Thus, Appellant cannot argue that her failure to file a formal proof of claim prior to Plan confirmation resulted from her reliance on the March 1996 Notice. Accordingly, the Bankruptcy Court did not err in holding that Appellant failed to timely file a formal proof of claim.

■ Appellant next argues that even if she did not timely file a formal proof of claim, she timely filed an informal proof of claim by filing the October 4, 1995, complaint. Rule 3002(a) provides that an "unsecured creditor ... must file a proof of claim or interest for the claim or interest to be allowed...." FED.R.BANKR.P. 3002(a). "A proof of claim is a written statement setting forth a creditor's claim. A proof of claim shall conform substantially to the appropriate Official Form." *Id.* § 3001(a). The bar date for filing proofs of claims "is in the nature of a statute of limitations." *In re Reliance Equities, Inc.*, 966 F.2d 1338, 1345 (10th Cir.1992) (internal quotations omitted). Therefore, failure to file a timely proof of claim can result in the loss of the claim.

■ Courts have recognized a single exception to this rule, however, "where some informal proof of claim manifests on the 'judicial record' the existence, nature, and amount of the claim, which may thereafter be 'amended' by a formal proof of claim." *In re Hall*, 218 B.R. 275, 277 (Bankr.D.R.I.1998). To constitute an informal proof of claim, the following elements must be established:

1. the claim must be in writing;

2. the writing must contain a demand by the creditor on the debtor's estate;

3. the writing must evidence an intent to hold the debtor liable for such debt;

4. the writing must be filed with the Bankruptcy Court; and

5. based upon the facts of the case, allowance of the claim must be equitable under the circumstances.

*In re Reliance Equities, Inc.*, 966 F.2d at 1345; *In re Hall*, 218 B.R. at 277; *In re City Roofing Co. of Muskogee, Inc.*, 208 B.R. 503, 505 (Bankr.E.D.Okl.1997). If these elements are established, the creditor's informal proof of claim can serve as a timely filed proof of claim. *See, e.g., In re Hall*, 218 B.R. at 277–78.

■ In the present case, the determination of whether Appellant's Complaint to Determine Dischargeability, filed on October 4, 1995, constitutes a timely filed informal proof of claim is a close one. The first four requirements for establishing a valid informal proof of claim are met in this case. First, the complaint was in writing. Second, the complaint contained a demand by Appellant on Appellee's estate. Appellant claimed that Appellee was liable for the entirety of the state court judgment and that the judgment was nondischargeable. Third, the writing expressed an intent to hold Appellee liable for the debt. Fourth, the complaint was filed with the Bankruptcy Court on October 4, 1995, well before the December 1995 bar date. Whether it would be equitable to allow such a claim under the circumstances of this case, however, is a more difficult issue.

During the confirmation hearing in this case, counsel for Appellant objected to confirmation on the grounds that Appellant's Complaint to Determine Dischargeability of Debt was still pending. Appellee argued that Appellant had never filed a formal proof of claim. Counsel for Appellant then stated that he *intentionally* failed to file a formal proof of claim in part because he had already filed the adversary proceeding on October 4, 1995. (R. at 333). While it is true that the late Judge Abel responded, "[w]ell, I've held a lot of times that a filing of an Adversary on the same subject matter is tantamount to ... the filing of a Proof of Claim, Counsel," *id.*, it is also true that the court made it quite clear

to counsel that it did not believe that this complaint constituted an informal proof of claim. Indeed, immediately thereafter, the court confirmed the Plan.

Further, it was not until April of 1996, when the Bankruptcy Court held a trial on Appellant's Motion to Convert or Dismiss on the grounds of eligibility/jurisdiction under § 109(e), that Appellant re-urged her position on this issue. During the April 1996 proceeding, the court asked counsel for Appellant why he had not filed a formal proof of claim prior to the December 1995 bar date. *Id.* at 385. Counsel first replied that he had filed a formal proof of claim the previous day, April 17, 1996. *Id.* (referring to the errant March 1996 Notice). The court "chuckled" and then asked counsel if he had forgotten about the December 1995 bar date. *Id.* Counsel replied that he understood from the confirmation hearing that the court viewed the filing of an adversary proceeding as tantamount to a proof of claim. *Id.* The court acknowledged that it may subscribe to this viewpoint, but stated that the burden is on the creditor to inform both the court and the debtor *prior to confirmation* that the creditor intends to use the filing of the adversary proceeding as an informal proof of claim— something that Appellant did not do in this case. *Id.*

Based upon the above, and the entire course of the proceedings in this case, this court finds that the scales of equity weigh against recognizing Appellant's Complaint to Determine Dischargeability as an informal proof of claim. Appellant's counsel conceded that he *intentionally* did not file a formal proof of claim. Appellant instead proceeded on the assumption that the complaint might be deemed an informal proof of claim. Appellant failed to bring this assumption to the attention of either the court or Appellee until mid-way through the confirmation hearing. Appellant did not thereafter try to qualify her complaint as an informal proof of claim until well over a year later.

Further, the proceedings in this case have been long and complex. Two different bankruptcy judges have presided over the bankruptcy and the adversary proceedings. Appellant filed numerous motions and adver-

sary proceedings as part of her efforts to ensure that she could collect the full amount of her state court judgment against Appellant. Unfortunately for Appellant, however, she did not file a timely proof of claim. As a consequence, the Bankruptcy Court had no choice but to deny many of Appellant's requests for relief. To now require the parties to go back to the Bankruptcy Court would undoubtedly impose a substantial burden not only upon judicial economy, but also upon Appellee. Although this court can sympathize with Appellant's plight, the fact remains that Appellant simply did not correctly follow the complicated procedures of bankruptcy law. Therefore, the court finds that it would be inequitable to allow Appellant's complaint to qualify as an informal Proof of Claim. Accordingly, the Bankruptcy Court's ruling that Appellant failed to timely file a proof of claim is AFFIRMED.

### F. January 7, 1997, Order Denying Wanda Nikoloutsos' Motion for Summary Judgment

Appellant's final point on appeal is from the Bankruptcy Court's order denying summary judgment on her Complaint to Revoke Confirmation Pursuant to §1330(a), signed on January 7, 1997. Appellant complains that Appellee failed to meet his burden under Federal Rule of Civil Procedure 56 because he did not come forward with affirmative evidence to controvert Appellant's motion. Appellant also argues that Appellee entered into a Joint Pretrial Order, in which he stipulated to the facts as alleged by Appellant.

Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment has the burden to show there is no genuine issue of material fact and that she is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Where the movant bears the burden of proof on an issue, she must come forward with evidence

that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986) (emphasis in original). Once the movant has carried its burden, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial," FED.R.CIV.P. 56(e), and adduce affirmative evidence. *Anderson,* 477 U.S. at 257.

Here, Appellant has not shown that she met her burden of showing that there was no genuine issue of material fact in this case. Indeed, after a full trial on this issue, the court found that Appellant could not meet her burden of establishing fraud—a finding affirmed by this court today. Without such a showing by Appellant, Appellee was not required to come forward with specific facts and adduce affirmative evidence. Further, this court does not agree that Appellee stipulated to the entirety of Appellant's version of the facts in this case by signing the Joint Pretrial Order. A reasonable interpretation of the Joint Pretrial Order is that Appellee stipulated to the uncontested facts in this case, not to Appellant's interpretations of the facts, such as the allegation that Appellant acted in bad faith or intended to commit fraud in this case. Indeed, Appellee has vigorously disputed such allegations throughout this case. Finally, after a full trial on the issues presented by the complaint, the court found in favor of Appellee—a holding affirmed by this court. Therefore, the Bankruptcy Court's order denying Appellant's Motion for Summary Judgment is affirmed.

### III. CONCLUSION

For each of the reasons stated above, the Bankruptcy Court's rulings on each of the matters challenged by Appellant are hereby AFFIRMED. This case is hereby REMANDED to the Bankruptcy Court for proceedings consistent with this opinion. It is so ORDERED.