In re Betty EDWARDS, Debtor.

STAMFORD MUNICIPAL EMPLOYEES' CREDIT UNION, INC., Plaintiff,

v.

Betty EDWARDS, Defendant.

Bankruptcy No. 5–85–00148.
Adv. No. 5–85–0130.

United States Bankruptcy Court,
D. Connecticut.

Dec. 23, 1986.

Walter T. Flaherty, Jr., Stamford, Conn., for plaintiff.

Charles S. Ambrogio, O'Rourke & Ambrogio, Stratford, Conn., for defendant.

MEMORANDUM OF DECISION ON COMPLAINT TO REVOKE CHAPTER 13 ORDER OF CONFIRMATION UNDER CODE SECTION 1330(a)

ALAN H.W. SHIFF, Bankruptcy Judge.

The debtor filed a Chapter 13 petition on March 12, 1985. On March 27 of that year, she filed a plan and a Chapter 13 statement. On August 14, 1985, following the May 13, 1985 meeting of creditors called pursuant to Code § 341(a), a confirmation hearing was held, and the debtor's plan was confirmed on a finding that it complied with the provisions of Code sec. 1325(a).[1] On September 30, 1985, the plaintiff, an unsecured creditor, filed a complaint, seek-

---

1. 11 U.S.C. § 1325(a) provides that:
   Except as provided in subsection (b), the court shall confirm a plan if—

   (1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;

ing revocation of the confirmation order under Code § 1330(a)[2] and dismissal of the debtor's petition, alleging that the order of confirmation was obtained by fraud. The debtor has denied the allegations of fraud.

1.

Fraud under § 1330(a) is not defined,[3] the legislative history is silent as to the meaning of the term,[4] and there are no judicial decisions which shed light on its interpretation. However, Code § 1144 is essentially identical to § 1330(a), so that decisions which discuss fraud under § 1144 are helpful in illuminating its meaning in the instant proceeding.

In *In re Hertz*, 38 B.R. 215, 220 (Bankr. S.D.N.Y.1984), it was held that "revocation under § 1144 requires a showing of actual fraud." In *Matter of Braten Apparel Corp.*, a proceeding involving a determination of fraud in a Chapter XI case under Bankruptcy Act § 386, the predecessor to § 1144, the court stated, "[w]hat is clear is that [the creditor] has the burden of proving 'fraud' and that fraud requires actual fraudulent intent". *Matter of Braten Apparel Corp.*, 21 B.R. 239, 256 (Bankr.S.D. N.Y.1982), *aff'd*, 26 B.R. 1009 (S.D.N.Y.), *aff'd mem.*, 742 F.2d 1435 (2d Cir.1983). As the *Braten* bankruptcy court went on to

state, "But Congress provided no dictionary for the word "fraud" and left it to the development of judicial gloss to guide delineation of types of conduct generally understood to constitute fraud." *Id.* 11 U.S.C. § 523(a)(2)(A) also provides guidance for determining the prerequisites necessary for the demonstration of fraud under § 1330(a) since actual fraud[5] is included as a ground for exception to discharge under that section. Section 523(a)(2)(A) was enacted to codify case law as expressed in *Neal v. Clark*, 95 U.S. (5 Otto) 704, 24 L.Ed. 586 (1877) in which "fraud" was interpreted to mean actual or positive fraud rather than fraud implied by law. 124 Cong.Rec. S 17,412–13 (daily ed. Oct. 6, 1978), and such fraud involves moral turpitude or intentional wrong for which bad faith or immorality can be imputed. *In re Stone*, 43 B.R. 377, 379 (Bankr.D.Vt.1984).

As this court stated in *In re Fosco*, 14 B.R. 918 (Bankr.D.Conn.1981), the plaintiff must prove the following five elements to sustain an objection to the dischargeability of a debt under § 523(a)(2)(A):

(1) the debtor made representations;

(2) that at the time he knew they were false;

(2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;

(3) the plan has been proposed in good faith and not by any means forbidden by law;

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder; and

(6) the debtor will be able to make all payments under the plan and to comply with the plan.

**2.** 11 U.S.C. § 1330(a) provides that:

On request of a party in interest at any time within 180 days after the date of the entry of an order of confirmation under section 1325 of this title, and after notice and a hearing, the court may revoke such order if such order was procured by fraud.

**3.** Compare Code § 523(a)(2)(B).

**4.** Sec. 1330(a) is derived from former Bankruptcy Act § 671 which was also silent as to the meaning of fraud.

**5.** 11 U.S.C. § 523(a)(2)(A) excepts from discharge those debts which are—

for money property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

(3) that he made them with the intention and purpose of deceiving the creditor;

(4) that the creditor relied on such representations;

(5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.

*Id.* at 920. *See In re Houtman,* 568 F.2d 651, 655 (9th Cir.1978); *In re Hunt,* 30 B.R. 425, 435 (Bankr.M.D.Tenn.1983); 37 Am.Jur.2d. *Fraud & Deceit* § 12 (2d ed. 1968). A showing of reckless indifference to the truth is sufficient to demonstrate actual knowledge, *Morimura v. Taback,* 279 U.S. 24, 33, 49 S.Ct. 212, 215, 73 L.Ed. 586 (1929) and the requisite intent to deceive. *In re Houtman, supra,* 568 F.2d at 656; *In re Hospelhorn,* 18 B.R. 395, 398 (Bankr.S.D.Ohio 1981).

■ In the context of this proceeding, I conclude that the plaintiff must prove each of the following five elements under § 1330(a) in order to sustain the burden of proving that the debtor obtained a confirmation of her plan by fraud:

First, that the debtor made a representation regarding her compliance with Code § 1325 which was materially false;

Second, that the representation was either known by the debtor to be false, or was made without belief in its truth, or was made with reckless disregard for the truth;

Third, that the representation was made to induce the court to rely upon it;

Fourth, the court did rely upon it; and

Fifth, that as a consequence of such reliance, the court entered the confirmation order.

### 2.

■ Although the plaintiff attacks the debtor's Chapter 13 statement of income and expenses in connection with her residence, insufficient credible evidence was offered to satisfy the plaintiff's burden of proving that confirmation was obtained by fraud in that regard. Plaintiff's counsel appears to have recognized this deficiency in his closing argument in which he assert-

ed that the key factor in the proceeding was the debtor's undervaluation of the property, as a result of which the plaintiff and other unsecured creditors received less under the confirmed plan than they would have received from a liquidation of the debtor's assets. *See* § 1325(a)(4). As the plaintiff reasons, the debtor's Chapter 13 statement that the property had a market value of $100,000.00 was inaccurate; the discrepancy between the value listed by the debtor and the real value asserted by the plaintiff, $129,000.00, was material; and the court must have relied upon the debtor's valuation in order to make an essential finding under Code § 1325(a)(4).

The plaintiff's logic is unpersuasive. In the first place, I am not convinced by the plaintiff's expert that the property had a market value in excess of $100,000.00. Real estate appraisal is hardly an exact science. Appraisers frequently disagree, and it is not uncommon for a purchase price to be significantly higher or lower than the appraisal of an expert. Moreover, as the court in *Connolly v. Gishwiller,* 162 F.2d 428, 433 (7th Cir.1947) observed,

There is no general rule for determining what facts will constitute fraud, but it is to be found or not according to the special facts of each particular case. It is rarely susceptible of direct proof, but must ordinarily be established by circumstantial evidence and legitimate inferences arising therefrom, which, taken as a whole, will show the fraudulent intent or purpose with which the party acted.

Likewise, the *Braten* court stated:

Fraud, by its very nature, is difficult to prove, as it is not readily susceptible of ocular observation. It is, by its nature, covert and surreptitious. Indeed, intent is rarely the object of direct proof, and must be inferred from the evidence in the case dealing with the transaction in question. The court, upon its review of the evidence, must determine whether the circumstances, when all are taken together, are consistent with an honest intent. (citations omitted).

*Matter of Braten Apparel Corp., supra,* 21 B.R. at 256. So while fraud may be proved by circumstantial evidence, it is equally clear that fraud is never to be presumed, *In re Isidor Klein, Inc.,* 22 F.2d 906, 908 (2d.Cir.1927); *Alaimo v. Royer,* 188 Conn. 36, 39, 448 A.2d 207 (1982), *citing Creelman v. Rogowski,* 152 Conn. 382, 384 (1965); *see Lopinto v. Haines,* 185 Conn. 527, 534, 441 A.2d 151 (1981), and if honest intent can be inferred, fraud cannot be found. *In re Hunt,* 30 B.R. 425, 436 (M.D.Tenn.1983).

The debtor testified that the value of her property was $100,000.00. No evidence was offered that the debtor knew or had reason to know that it was worth more than that amount. But even assuming *arguendo* that the property had a value in excess of $100,000.00, as the plaintiff claims, and assuming further that such a value would render the debtor solvent, no persuasive evidence was offered, and I do not find that the debtor's statement as to the value of her home was known by the debtor to be false when it was made, or that it was made without belief in its truth, or with reckless disregard for the truth. Therefore, the plaintiff has failed to prove fraudulent intent on the part of the debtor.

The debtor argued, and the plaintiff did not dispute, that the plaintiff had knowledge of the debtor's plan and Chapter 13 statement from the time they were filed in March 1985, approximately five months before the confirmation hearing. Subsequent to the filing of those documents, there was a meeting of creditors as to which the plaintiff was given notice, the Chapter 13 trustee reviewed the statement and plan to determine whether the plan could be confirmed, and a confirmation hearing was held at which the plaintiff was represented. The plaintiff had an opportunity to bring evidence to the confirmation hearing to challenge the debtor's property evaluation, her compliance with the good faith requirement, and the best interest of creditors'

test,[6] but failed to do so. Now, the plaintiff, in the name of equity, as its counsel argues, wants to undo the confirmation order, having failed to participate in the confirmation process or appeal from the result. Under these circumstances, the only issue is fraud, and that issue requires, *inter alia,* a finding of guilty knowledge. No such finding may be made on the evidence presented at this proceeding.

Accordingly, it is Ordered that judgment enter in favor of the defendant debtor.

---

**6.** While unsecured creditors do not vote for or against a Chapter 13 plan, their interests are protected under 11 U.S.C. § 1325(a)(4) which requires that as a condition precedent to confirmation, the value (as of the effective date of the plan) of property distributed to unsecured creditors is not less than they would receive if the debtor were liquidated under Chapter 7.